**GLENNON v. BUTLER.**

No. 785.

Municipal Court of Appeals for the District of Columbia.

Argued April 11, 1949.

Decided May 19, 1949.

Rehearing Denied July 13, 1949.

---

520

James A. Crooks, Washington, D. C., for appellant.

Herman Miller, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HODD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

We are again called upon to decide whether the purchaser of a cooperative apartment desiring it for his personal occupancy may under our local Rent Act[1] obtain a judgment of eviction against a tenant in possession thereof.

In an earlier case we held that one who had purchased an apartment in a cooperative building was a "landlord" under the Rent Act, coming under the classification of "owner, lessor, sublessor, or other person entitled to receive rent" and as such was entitled to maintain a suit for possession of the apartment for his own personal use. Hicks v. Bigelow, D.C.Mun.App., 55 A.2d 924. We analyzed the documents by which the plaintiff had acquired her interest in the cooperative organization and held that though she had not acquired a fee simple title she was nevertheless under the Rent Act a landlord and entitled to maintain her action. We pointed out that as between plaintiff and her cooperative corporation there was in form a landlord-tenant relationship but in substance the apartments in the building were owner occupied, and that the monthly payments by stockholders really represented the cost of operating and maintaining their own property.

[1] Code 1940, Supp. VI, 45—1601 et seq. Note that by an amendment to the Rent Act, approved April 19, 1949, 77 W.L.R. 389, restrictions were placed on the right of members of cooperatives to bring such actions. The present suit was filed October 4, 1948 and is not subject to the restrictions in the amended Act. Moreover, the amendment itself specifically exempts from its restrictions one who "as the holder of stock or membership acquired in the cooperative corporation or association prior to March 1, 1949, a stockholder or member was entitled to possession of a dwelling unit in the structure or premises by virtue of a proprietary lease or otherwise." D.C.Code 1940, § 45—1605.

We also pointed out that in two cases involving cooperative apartments our highest court had described the stockholders as "owners" and as having "legal title" to the apartments.[2] Accordingly we held that the cooperative purchaser of the apartment was not barred by any provision of the Rent Act from recovering possession thereof for her personal use.

The present appeal is brought by one of thirteen tenants of the Westmoreland Apartments, 2122 California Street, against whom possessory actions were filed by persons who had purchased apartments in that building under a cooperative venture. In the trial court it was stipulated that the decision in this case shall govern the disposition of the other twelve cases. It was also stipulated that plaintiff desired in good faith to acquire possession of the apartment in suit for his immediate and personal use as a dwelling. Sitting without a jury the trial judge decided in favor of plaintiff and awarded him a judgment for possession. Defendant appeals.

We must first examine the legal setup of this cooperative and the status of the plaintiff with reference thereto. On May 3, 1948 the "Westmoreland Cooperative," a non-profit corporation, was incorporated under the District of Columbia Code.[3] The same month the Association entered into a contract to purchase the Westmoreland and the deed was duly delivered to the Association on September 6, 1948. The sales contract included this provision: "The Association is purchasing the apartment project for the personal use and occupancy of its members; sellers agree that, subject to any rights present occupants may have under existing leases or the Emergency Rent Act, the Association and its members shall have possession upon the settlement * * *."

Plaintiff Butler entered a "Mutual Ownership Contract" with the Cooperative on September 8th. By this contract, he received the "right of perpetual use and enjoyment" of Apartment 262 (the apartment here in suit), which right the Association agreed to deliver, subject to rights of tenants in possession. Mr. Butler paid a membership fee of $100. As "purchase price for the perpetual use" of the apartment he agreed to pay to the cooperative association $13,100, the cash down payment being $3,275, and the balance, by way of principal and interest, he agreed to pay on a fixed monthly basis. These various payments were his share of the total purchase price of the project. He also agreed to monthly operating payments for his estimated pro rata cost of services, utilities and reserves for taxes and insurance. Other contract provisions pertained to property depreciation rates, to transfer of the perpetual use to others by sale, gift and inheritance, to his exclusive use of the apartment, and to the termination of the contract by the Association under certain circumstances. Plaintiff received a "Nontransferable Certificate of Membership and Right of Perpetual Use and Enjoyment" in the Association upon payment of the membership fee.

Defendant's lease on the apartment in question having ended September 30, 1948, and plaintiff having by assignment succeeded to all the "right, title and interest" of defendant's original lessor, the suit below was filed and as we have said, was decided in favor of plaintiff.

Appellant's first contention is that the Westmoreland Cooperative Association as a corporation cannot, for the sole purpose of managing and operating, own real estate in the District of Columbia.[4] This argument must fail. The Cooperative Associations Chapter of our Code authorizes such organizations "to engage in any one or more lawful mode or modes of acquiring, * * * operating, * * * exchanging, or distributing any type or types of property * * * for the primary and mutual benefit of the patrons of the association * * * as ultimate consumers."[5] They are specifically authorized "to ac-

[2] Moses et al. v. Boss, 63 App.D.C. 381, 72 F.2d 1005; Wardman Const. Co. v. Flynn, 60 App.D.C. 357, 54 F.2d 831.
[3] Code 1940, 29—801 et seq.
[4] D.C.Code 1940, 29—201, provides: "That nothing herein contained shall be held to authorize the organization of corporations to buy, sell, or deal in real estate, except corporations to transact the business ordinarily carried on by real-estate agents or brokers."
[5] Code 1940, 29—803.

quire, own, hold, sell, lease, pledge, mortgage, or otherwise dispose of any property incident to its purposes and activities."[6] And a later section provides that no law conflicting or inconsistent with the provisions of the particular chapter is to be construed as applicable to these cooperative associations.[7]

■■ This argument must fail for the additional reason that it is a collateral attack upon the creation and existence of the cooperative, and such alleged want of capacity "to own and dispose of real estate can only be asserted by the State."[8] It cannot be asserted by parties to a private dispute.

Appellant's next contention is that, since a corporation exists separate and distinct from its members, plaintiff Butler has no title to or interest in the real property owned by the Association. She argues that the corporation is the landlord and that the individual members cannot exercise derivative rights under the corporate owner. She insists that the fundamental characteristics of ownership are in the corporation, not the members. She points to the purchaser's inability to pay off his share of the existing mortgage and hold his apartment free of encumbrance, and that any foreclosure thereof would be against the corporation; also, that the legal title to the fee is in the corporation.

■ These are virtually the same basic contentions which were made in Hicks v. Bigelow, supra, and which we found it necessary to reject. Here, as in that case, it is clear that the indicia of ownership are in the purchaser even though the legal title is in the association. These indicia include the substantial down payment and the agreed price in the contract, his assumption of a proportionate share of the purchase price and indebtedness of the project, his right to alienate or devise his right of perpetual use and enjoyment, his voice in its management, and most significant, his exclusive, personal right to occupy the particular apartment he bought. These rights, though not absolute in nature, do vest in him most of the attributes of an owner, and are sufficient to establish his status as "landlord" under the Rent Act.[9] For, as was pointed out in a recent District Court case, Abbot v. Bralove, D.C.D.C., 81 F. Supp. 532, 533, Tamm, J., courts should consider the substantial nature of the rights of such purchasers, rather than the mere form of the transaction. By any such reasonable test, this plaintiff's status as landlord seems clear and unassailable.

Appellant analyzes Hicks v. Bigelow, supra, in an attempt to differentiate it from the facts of this case. Principally, she contends that in that case there were issued freely transferable stock certificates and proprietary, renewable leases. We held that despite the form of the transaction apparently making the purchaser a lessee, he was in fact a landlord under the Rent Act. In this case, no reference is made to the purchaser as a lessee. His status as landlord is stronger than that of the plaintiff in that case. We rule, therefore, that there is no material difference here, and that the decision in Hicks v. Bigelow governs this case.

■ The purchaser thus coming within the provisions of the Rent Act as a landlord, it is not necessary to define the pre-

---

[6] Code 1940, 29—804(5).

[7] Code 1940, 29—843. The compiler's note lists the above cited § 29-201, forbidding the buying, selling, or dealing in real estate to corporations, as included here.

[8] Hight v. Richmond Park Improvement Co., 47 App.D.C. 518, 519, 533.

[9] Appellant has cited cases in other jurisdictions, where courts have refused to ignore the separate corporate entity, distinct from the member or stockholder. These cases do not govern here, however, for the reasons stated below and in Hicks v. Bigelow, supra.

As was stated in Osborn v. Page, 71 W.L.R. 225: "Furthermore, ever since the time of the Dartmouth College case, Trustees of Dartmouth College v. Woodward, 4 Wheat. 418, 4 L.Ed. 629, a corporation, where necessary to the case, has been treated as a mere fiction of the law, and in cases too numerous to mention, the corporation fiction is disregarded when the ends of justice so require. 'The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth' (14 C.J. 61)."

cise nature of his estate in the property, whether legal or equitable, a chattel real or a chattel interest, a joint tenancy or trust ownership.[10] It is clear that he has acquired rights which he may enforce as the equitable and beneficial owner of the apartment and as a member of the association owning the project, irrespective of his not having title to the fee in himself. "* * * the local Rent Act does not require that the person suing for possession be the owner of a fee simple title. It is sufficient if the plaintiff be the landlord * * *."[11]

 Lastly, appellant contends that even if the plaintiff had a right of possession, the corporation had not acquired title to the property at the time the suit was filed and therefore could not transmit any rights of ownership to its members, and that hence the action was prematurely brought. We might dispose of this contention by pointing out that the record nowhere shows that the point was made before or at the time of trial, but seems to have been first advanced in the motion for the new trial. This as we have held, was too late.[12] But, even if we examine the contention on its merits, it cannot be sustained. The deed was delivered September 6, 1948 and this is when title passed, almost a month before suit was filed. The fact that settlement and recordation took place later does not affect the action here. The statute says that a deed conveying real property "shall be held to take effect *from the date of the delivery thereof,* except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the recorder of deeds for record."[13] (Italics ours.) Appellant

clearly does not come within the last exception stated. The effective date being that of delivery of the deed, it cannot be said that the action was prematurely filed.

Affirmed.

---

[10] The opinion in Abbot v. Bralove, supra, indicated that the estate was an equitable one with the bare legal title in the corporation. In Stafford Owners, Inc., v. United States, 39 F.2d 743, 745, 69 Ct.Cl. 475, a case involving a corporation stock tax on a cooperative apartment, it was held that the corporation "holds the legal title to the premises for the convenience of the stockholders, each of whom has an equitable and beneficial ownership of all the apartments in the building." In Osborn v. Page, supra, it was remarked that the estate was apparently a chattel real. A discussion of the theories and legal aspects on Co-operative Apartment Housing is in a note in 61 Harvard Law Review 1407-1427.

[11] Mancuso v. Santucci, D.C.Mun.App., 60 A.2d 697.

[12] Germaine v. Cramer, D.C.Mun.App., 65 A.2d 573, and cases there cited.

[13] Code 1940, 45—501. See Owens v. Liff, D.C.Mun.App., 65 A.2d 921.